RENDERED: JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2026-CA-0132-ME

E.E.W.                                                                                            APPELLANT

v.                      APPEAL FROM JEFFERSON CIRCUIT COURT
                        HONORABLE LAUREN ADAMS OGDEN, JUDGE
                        ACTION NO. 24-AD-500321

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.S.S.; AND
C.A.S., A MINOR CHILD                                                        APPELLEES

AND

NO. 2026-CA-0133-ME

A.S.S.                                                                                            APPELLANT

v.                      APPEAL FROM JEFFERSON CIRCUIT COURT
                        HONORABLE LAUREN ADAMS OGDEN, JUDGE
                        ACTION NO. 24-AD-500321

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; E.E.W.; AND
C.A.S., A MINOR CHILD                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; McNEILL AND MOYNAHAN, JUDGES.

THOMPSON, CHIEF JUDGE: E.E.W. (Mother) and A.S.S. (Father) appeal from orders terminating their parental rights to C.A.S. (Child).[1] The parents argue that the evidence was insufficient to involuntarily terminate their parental rights. We find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

Child was born premature at 25 weeks on June 11, 2022. Child was born with a hole in his heart and required an extensive stay in a Neonatal Intensive Care Unit (NICU). Child's blood tested positive for THC at the time of birth. The Cabinet became involved with the family in October of 2022. The Cabinet filed a petition with the court alleging that the parents failed to provide for Child's medical needs while in the hospital and that their visits with Child were inconsistent. Allegations included that the parents did not inform the medical staff that a heart monitor was not working, that the parents failed to properly feed Child, and that the parents were hard to reach when decisions needed to be made about

---

[1] This case involves allegations of dependency and neglect against a minor child; therefore, we will not use the names of the parties in order to protect the child's privacy.

Child's medical care. Further, as to visiting the Child, Mother testified at the termination hearing that they would visit Child in the hospital about four times a week. A second petition was filed sometime later alleging that Father was violent toward Mother; however, the record does not show that there was an investigation into the allegations by the Cabinet or police, and this petition was not the focus of the lower court proceedings. Mother and Father admitted to their use of marijuana, but denied all other allegations.

Child was placed into the temporary custody of the Cabinet on October 24, 2022, and an adjudication was held in January of 2024. During the adjudication, the court held that Child had been neglected because Mother and Father had neglected Child's medical needs. Child has been in the custody of the Cabinet since October of 2022.

Mother and Father were ordered to complete certain tasks by the court and were required to cooperate with the Cabinet. The Cabinet gave each parent a case plan. The parents were required to do the following: undergo psychological assessment; submit to a substance abuse evaluation and follow all recommendations; remain clean and sober; undergo random drug screenings; attend counseling and follow recommendations; attend parenting classes; engage in a twelve-step narcotics program; and participate in supervised visitation. Mother was also required to submit to an assessment by the University of Kentucky

Targeted Assessment Program (UKTAP) and follow any recommendations, complete a domestic violence program, and complete a marijuana education program. Father was also required to attend individual therapy, attend anger management classes, and participate in a medication management program.

The evidence in the record indicates that Mother participated in a psychological assessment on January 30, 2023, and Father had his psychological assessment on February 10, 2023. The parents also participated in the supervised visits with Child. The supervised visits began in March of 2023, but ended in October of 2023. The facility providing supervision for the visits ended the parents' participation in October of 2023 because the parents were not engaging in any other Cabinet or court ordered programs. In other words, the parents completed their psychological assessments in early 2023 and then stopped participating. The Cabinet attempted to enroll the parents in another supervision program; however, the parents declined due to the program requiring a fee, as well as the parents having concerns regarding some of the program's rules.[2] The Cabinet made it clear to the parents could enroll in the first program again once they started completing their case plan requirements. It is also worth noting that Mother and Father tested positive for THC throughout 2023 and 2024.

---

[2] The first supervision program used by the Cabinet and the parents was a free program.

Around the middle of 2024, the parents began engaging in their case plans; however, on September 13, 2024, the Cabinet petitioned the Jefferson Circuit Court, Family Division, to involuntarily terminate Mother and Father's parental rights to Child. A trial on the petition was held over two days on June 27, 2025, and October 24, 2025. Linet Bermudez, the Cabinet social worker, testified on the first day of trial. She testified as to what Mother and Father were required to do pursuant to the court's orders and Cabinet's case plan. She testified that neither parent had completed his or her case plan and that there had been stretches of multiple months where the parents had not communicated with the Cabinet. Between the first trial date and the second, Ms. Bermudez was replaced with another social worker. On the second day of trial, Dana Burton, the new social worker, testified. She testified that she acquired the case on July 15, 2025, and that Mother and Father had completed most, but not all, of their case plans. Also testifying on the second trial date were Mother, Father, and Child's foster mother. Mother and Father testified that a lack of financial stability, unreliable transportation, and the belief that they had not neglected their Child were the reasons for their noncompliance with the Cabinet's case plans and court orders. The foster mother testified that Child's needs were being met.

On January 5, 2026, the family court entered orders terminating Mother and Father's parental rights. These appeals followed.

# STANDARD OF REVIEW

The standard for review in termination of parental rights cases is set forth in *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116-17 (Ky. App. 1998). Therein, it is established that this Court's standard of review in a termination of parental rights case is the clearly erroneous standard found in Kentucky Rules of Civil Procedure (CR) 52.01, which is based upon clear and convincing evidence. Hence, this Court's review is to determine whether the trial court's order was supported by substantial evidence on the record. And the Court will not disturb the trial court's findings unless no substantial evidence exists on the record.

Furthermore, although termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met. While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution. It is a very serious matter.

*M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008) (citations omitted).

The standard of proof before the trial court necessary for the termination of parental rights is clear and convincing evidence. "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people."

*V.S. v. Commonwealth, Cabinet for Human Resources*, 706 S.W.2d 420, 423-24

(Ky. App. 1986) (citations omitted).

## TERMINATION OF PARENTAL RIGHTS REQUIREMENTS

In order for a court to involuntarily terminate parental rights, certain

requirements must be met. Kentucky Revised Statutes (KRS) 625.090 states:

(1) The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the record by clear and convincing evidence that:

(a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding;

3. The child is found to have been diagnosed with neonatal abstinence syndrome at the time of birth, unless his or her birth mother:

a. Was prescribed and properly using medication for a legitimate medical condition as directed by a health care practitioner that may have led to the neonatal abstinence syndrome;

b. Is currently, or within ninety (90) days after the birth, enrolled in and maintaining substantial compliance with both a substance abuse treatment or recovery program and a regimen of prenatal care or postnatal care as recommended by her health care practitioner

throughout the remaining term of her pregnancy or the appropriate time after her pregnancy; or

c. In the absence of a prescription for the treatment of a legitimate medical condition, agrees, prior to discharge from the hospital, to participate in a court-ordered assessment by a drug treatment provider and the assigning of a certified peer support specialist for referral to appropriate treatment, and agrees to participate in treatment which shall commence within ninety (90) days after the birth; or

4. The parent has been convicted of a criminal charge relating to the physical or sexual abuse or neglect of any child and that physical or sexual abuse, neglect, or emotional injury to the child named in the present termination action is likely to occur if the parental rights are not terminated;

(b) 1. The Cabinet for Health and Family Services has filed a petition with the court pursuant to KRS 620.180 or 625.050; or

2. A child-placing agency licensed by the cabinet, any county or Commonwealth's attorney, or a parent has filed a petition with the court under KRS 625.050; and

(c) Termination would be in the best interest of the child.

(2) No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

(b) That the parent has inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;

(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;

(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to any child;

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

(f) That the parent has caused or allowed the child to be sexually abused or exploited;

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;

(h) That:

1. The parent's parental rights to another child have been involuntarily terminated;

2. The child named in the present termination action was born subsequent to or during the pendency of the previous termination; and

3. The conditions or factors which were the basis for the previous termination finding have not been corrected;

(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect;

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights; or

(k) That the child has been removed from the biological or legal parents more than two (2) times in a twenty-four (24) month period by the cabinet or a court.

(3) In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, or a disability as defined in KRS 199.011, if the mental illness, intellectual disability, or disability renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition:

    1. Made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court; or

    2. Provided a parent with a disability as defined in KRS 199.011 with targeted adaptive and supportive services based on an individual assessment of the parent, or has received a written acknowledgement from the parent knowingly and affirmatively rejecting the offered services;

(d) The efforts and adjustments the parent has made in his or her circumstances, conduct, or conditions to make it in the child's best interest to return the child to his or her home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

(4) If the child has been placed with the cabinet, the parent may present testimony concerning the reunification, adaptive or supportive services offered by the cabinet, and whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent.

(5) If the parent proves by a preponderance of the evidence that the child will not continue to be an abused or neglected child as defined in KRS 600.020(1) if returned to the parent, or if the parent proves by a preponderance of the evidence that appropriate and specifically targeted adaptive or supportive services based upon an individual assessment of the parent have not been offered or provided to the parent, the court in its discretion may determine not to terminate parental rights.

(6) Upon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days either:

(a) Terminating the right of the parent; or

(b) Dismissing the petition and stating whether the child shall be returned to the parent or shall remain in the custody of the state.

KRS 600.020 states in relevant part:

(1) "Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when:

(a) His or her parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person exercising custodial control or supervision of the child:

1. Inflicts or allows to be inflicted upon the child physical or emotional injury as defined in this section by other than accidental means;

2. Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;

-12-

3. Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child, including but not limited to parental incapacity due to a substance use disorder as defined in KRS 222.005;

4. Continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child;

5. Commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child;

6. Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child;

7. Abandons or exploits the child;

8. Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being when financially able to do so or offered financial or other means to do so. A parent or other person exercising custodial control or supervision of the child legitimately practicing the person's religious beliefs shall not be considered a negligent parent solely because of failure to provide specified medical treatment for a child for that reason alone. This exception shall not preclude a court from ordering necessary medical services for a child;

9. Fails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster

care for fifteen (15) cumulative months out of forty-eight (48) months; or

10. Commits or allows female genital mutilation as defined in KRS 508.125 to be committed[.]

In the case at hand, the family court found that the Cabinet had proven by clear and convincing evidence during the termination trial that Child had been neglected. KRS 625.090(1)(a)2. The court found KRS 600.020(1)(a)3., 4., 8., and 9. applicable as to child neglect. The court also found KRS 625.090(2)(a), (e), (g), and (j) applied. Finally, the court discussed the various factors listed in KRS 625.090(3) and held that it would be in Child's best interests that Mother and Father's parental rights be terminated.

## ANALYSIS

Mother and Father make similar arguments in their appeals regarding the lack of substantial evidence to support the termination of their parental rights. Mother, however, makes one unique argument which we will address first. Mother and Father both had prescriptions for medical cannabis and copies of their medical cannabis certificates are found in the record. On January 1, 2025, KRS 218B.045 became effective. KRS 218B.045 lists certain patient rights regarding the use of medical cannabis. KRS 218B.045(2) states that a person with a medical cannabis prescription who is

-14-

entitled to custody of, or visitation time or parenting time with, a minor child shall not be denied that right, and there shall be no presumption of abuse, neglect, or dependency for conduct permitted under this chapter unless the person's actions in relation to medicinal cannabis created an unreasonable danger to the safety of the minor child as established by clear and convincing evidence.

Mother argues that the family court should not have used the parents' marijuana use as a means to show negligence toward Child.

We note that the parents' marijuana use first became an issue in 2022 during the dependency, neglect, and abuse action before the district court. This was before KRS 218B.045 became law. We also acknowledge that the family court made its own determination that Child was neglected by the parents and KRS 218B.045 was in effect at the time. Finally, the Cabinet presented no evidence that the parents' use of medicinal cannabis created an unreasonable danger to Child. Based on these factors, we will ignore any findings or holdings from the family court regarding the parents' use of medical marijuana.

Even ignoring such, there is still substantial evidence that Child was neglected. As previously mentioned, the family court found that Child was neglected pursuant to KRS 600.020(1)(a)3., 4., 8., and 9. We believe that there was substantial evidence to support KRS 600.020(1)(a)3. and 9.[3] KRS

---

[3] We are not holding that the family court erred in finding that KRS 600.020(1)(a) 4. and 8. were applicable. The court found four instances of neglect, but not all four were needed for the

-15-

600.020(1)(a)3. states that it is neglect when a parent "[e]ngages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child[.]" KRS 600.020(1)(a)9. finds neglect when a parent "fails to make sufficient progress . . . in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) cumulative months out of forty-eight (48) months[.]"

The evidence indicates that Mother and Father took their psychological evaluations in early 2023 and participated in supervised visits until October of 2023. Other than those things, Mother and Father failed to make any progress on their case plans until the middle of 2024. Furthermore, Mother and Father had not completed their case plans by the first day of the termination of parental rights trial on June 27, 2025. In addition, Mother and Father would go months at a time without communicating with the Cabinet about Child or their case plan. This procrastination and lack of urgency essentially left them incapable of caring for Child and left Child in foster care for more than 15 months. Substantial evidence was present in this case to show that Mother and Father neglected Child.

---

termination of parental rights. We believe that the evidence supports KRS 600.020(1)(a)3. and 9. the most and will focus on those two sections.

Next, the family court had to find that one of the factors listed in KRS 625.090(2) was present. The court found KRS 625.090(2)(a), (e), (g), and (j) were applicable. Because only one is necessary, we need not address them all. KRS 625.090(2)(j), the requirement that the child has been in the Cabinet's custody for 15 cumulative months out of 48 months preceding the filing of the petition to terminate parental rights, has clearly been proven. Child was placed in the Cabinet's custody in October of 2022, the petition to terminate parental rights was filed in September of 2024, and Child was never returned to Mother and Father. Child was in the Cabinet's custody for around 23 months before the petition to terminate parental rights was filed.

Finally, the court had to find that it would be in Child's best interests to terminate Mother and Father's parental rights. The family court analyzed each of the factors in KRS 625.090(3) and we find substantial evidence supports the holding of the court. KRS 625.090(3)(a), mental illness of a parent, was not applicable. As for KRS 625.090(3)(b), the neglect of a child in the family, the court discussed the neglect findings of the dependency, neglect, and abuse action in the district court, as well as its own findings regarding neglect. KRS 625.090(3)(c) requires the Cabinet to provide reasonable efforts to reunite the child with the parents. The court found that the Cabinet had done so by making appropriate referrals in order for Mother and Father to comply with court orders

-17-

and complete their case plans. Moving on to KRS 625.090(3)(d), the parents' efforts in changing their circumstances to allow the child to return to the home in a reasonable amount of time, the court found that Mother and Father did not have stable housing or employment, and did not complete their case plans prior to the filing of the termination action. As to KRS 625.090(3)(e), the court found that, based on the testimony of the two social workers and Child's foster mother, Child is bonded to his foster family, Child's needs are being met, and Child is expected to continue improving if parental rights were terminated. The foster parents were even set to adopt Child once Mother and Father's parental rights were terminated. Finally, as to KRS 625.090(3)(f), the payment of a reasonable portion of substitute physical care and maintenance if financially able, the court found that Mother did pay some money toward Child's care in early 2025, but that was the extent of Mother and Father's financial involvement. While there is some poverty involved in this case, there was also inconsistent employment from Mother and Father.[4]

By the second termination trial date the parents had substantially complied with their case plans; however, it took them about three years to get to that point. Taking into consideration all of the best interest factors, we agree with

---

[4] We acknowledge that Mother was hospitalized a few times during the pendency of the dependency, neglect, and abuse case in the district court and the termination of parental rights case in the family court. These hospitalizations were due to Mother having Addison's disease, which weakened her immune system. Mother claimed her illness caused some of her employment instability.

the family court that it would be in the best interest of Child to terminate the parental rights of Mother and Father, and the court's findings are supported by substantial evidence.

## **CONCLUSION**

Based on the foregoing, we affirm the judgment of the family court. There was substantial evidence to support the court's judgment and all required factors found in KRS 625.090 were met.


ALL CONCUR.


BRIEFS FOR APPELLANT E.E.W.:

Anne W. McAfee
Shepherdsville, Kentucky

BRIEFS FOR APPELLANT A.S.S.:

Vincent F. Mallon
Louisville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Dilissa G. Milburn
Mayfield, Kentucky